**United States District Court**
**District of Massachusetts**

| | |
|---|---|
| Michael S. Lerner, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. |
| | ) 22-12063-NMG |
| Sinovac Biotech Ltd. et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**MEMORANDUM & ORDER**

**GORTON, J.**

This action arises out of a public investment in a private equity transaction ("the PIPE transaction") in which nearly 12 million new shares of stock of Sinovac Biotech Ltd. ("Sinovac" or "defendant") were allegedly issued and sold below market price to two private investors affiliated with Sinovac founder and Chief Executive Officer ("CEO"), Weidong Yin ("Yin"). Plaintiff Michael S. Lerner ("Lerner" or "plaintiff") on behalf of himself and a putative class of public shareholders of Sinovac submits that the PIPE transaction was intended to dilute the shares of minority shareholders and divest them of their rights. In December, 2022, plaintiff filed an action for wrongful equity dilution in this Court.

- 1 -

I.    **Background**

    A.    **The Parties**

Plaintiff is a shareholder of Sinovac purporting to represent a putative class of similarly situated shareholders. Sinovac is a NASDAQ-listed, publicly traded biopharmaceutical company that is incorporated in Antigua, West Indies and has its principal place of business in Beijing, China.[1]  The company researches, develops, manufactures and commercializes vaccines for a variety of diseases, including polio, mumps and COVID-19. Yin is the purported founder of Sinovac and he currently serves as its Chairman, President and CEO.

    B.    **Factual Background**

Plaintiff contends that, since at least 2016, Yin and a group of allied investors including SAIF Partners, Advantech, Vivo Capital and C-Bridge Capital ("the Yin Group") have colluded to take complete control of Sinovac for as little expenditure as possible.  Plaintiff asserts that in January, 2016, the Yin Group submitted a bid to the Sinovac board of directors to acquire all of Sinovac's shares below market value and to take Sinovac private.  Plaintiff contends that the Yin Group later rescinded the bid because other Sinovac investors,

---

[1] Due to other litigation challenging the legality of the PIPE transaction in 2019, NASDAQ has halted all trading in Sinovac stock for more than two years.

together with Sinobioway Group Co. Ltd. ("Sinobioway"), a large, publicly-traded Chinese company, had engineered a counter-offer at a higher price per share.

In March, 2016, Yin purportedly caused Sinovac's board of directors to adopt a Rights Agreement which plaintiff maintains was designed to enable the Yin Group to block any transaction of which they do not approve ("the Agreement").  Plaintiff claims that the Agreement includes a "poison pill" provision which permits the board to block any group of stockholders holding 15% or more of Sinovac's stock which enters into an agreement to vote their shares in unison by diluting the value of their stock.

In June, 2017, Sinovac announced that it had entered into an agreement where the Yin Group would acquire the company by purchasing Sinovac shares, purportedly at below market value, and take the company private.  Two days later, Sinobioway submitted a counter-proposal to acquire the shares of all other Sinovac stockholders at a 14.9% premium over the purchase price offered by the Yin Group.  In response, Yin once again retracted his agreement and rejected Sinobioway's counter-offer.

Plaintiff alleges that in or about April, 2018, Yin and Sinovac received positive clinical trial results for a new polio vaccine but concealed the results from the public in order

[to] take Sinovac private at a low price so that Yin
and his friends could enjoy the profits of a new
vaccine.

In July, 2018, Sinovac announced that it had issued and
sold nearly 12 million shares of its stock in a PIPE transaction
with Vivo Capital and Advantech.  Plaintiff contends that the
investors were members of the Yin Group and that they purchased
the shares at a discounted price so that Yin could gain control
of the corporate defendant at below market value.  As a result,
plaintiff alleges that the voting interest of minority
shareholders was diluted.

In early 2019, a multitude of
litigation on the subject has caused NASDAQ to halt the trading
of Sinovac shares which, coincidentally, have rapidly increased
in value.  In June, 2021, plaintiff reports that the World
Health Organization ("WHO") authorized Sinovac's Covid-19
vaccine for emergency use in adults 18 years or older and that
soon thereafter Sinovac received drug registration approval for
its polio vaccine from the Chinese National Medical Products
Administration and WHO prequalification.  Plaintiff asserts that
Sinovac posted over $18B in gross profit in 2021, as compared to
approximately $443M in 2020 and $204M in 2018.

While the value of Sinovac stock has purportedly
skyrocketed, plaintiff alleges that the Yin Group has
"siphon[ed] the value of the Company away from shareholders and

towards insiders". He claims that in May, 2020, Vivo Capital and Advantech, both of which were part of the PIPE transaction, each invested the equivalent of a 7.5% equity interest in Sinovac LS. Sinovac LS is a wholly owned subsidiary of Sinovac that purportedly developed Sinovac's Covid-19 vaccine. As a result, plaintiff asserts that "the value of Sinovac's [Covid-19 vaccine] resides in Sinovac LS".

While Sinovac LS reaps the considerable profits from the Covid-19 vaccine, Plaintiff avers that the equity investment of Vivo Capital and Advantech in that entity was acquired for less than market value. He contends that the Vivo Capital and Advantech acquisitions valued Sinovac LS "at only approximately $100 million" as compared with the December, 2020, equity investment of Sino Biopharmaceutical Limited in Sinovac LS which valued it at approximately $3.3B.

With trading halted, plaintiff asserts that Sinovac has deliberately maintained an active litigation posture in the related 1Globe action (see infra, § I.C) so that the Yin Group can continue to "transfer value away from Sinovac shareholders and [into] Yin and his insiders".

Plaintiff now brings a direct claim of wrongful equity dilution under Antigua's International Business Corporations Act ("IBCA"), § 204 against all defendants and seeks substantial monetary damages.

C.   The "Related" Actions

1.   The <u>1Globe</u> Suit

In March, 2018, Sinovac filed in this Court a complaint against the Chiang Li family and 1Globe Capital LLC ("1Globe"), a company controlled by that family and one of Sinovac's largest shareholders.  Sinovac seeks to enjoin 1Globe from electing a new board of directors, acquiring additional Sinovac shares and voting its existing Sinovac shares.

In response, 1Globe filed counterclaims for securities fraud and abuse of process in May, 2018.  It alleges that, beginning in 2016, Yin and other members of the then-board of directors ("the Old Board") refused to relinquish management and control of the corporation, although they had been voted out of office at an annual meeting held in February, 2018 ("the February election").  Moreover, 1Globe maintains that Sinovac filed the underlying complaint in an effort to entrench the Old Board and to further Yin's illicit attempts to acquire control over the company.

In August, 2018, one month after the PIPE transaction, 1Globe amended its counter-claims and also moved for a preliminary injunction to enjoin the Old Board from issuing the stock it sold to the private investors in the PIPE transaction until the results of the February election are confirmed.

In October, 2018, this Court denied 1Globe's motion for injunctive relief for lack of standing and failure to allege irreparable harm.  The case is currently stayed pending resolution of an appeal of yet another related case from the Eastern Caribbean Supreme Court in the High Court of Justice, Antigua and Barbuda ("the Antiguan Court"), 1Globe Capital, LLC, and Sinovac Biotech Ltd. (Claim No. ANUHCV 2018/0120).

### 2.    The Heng Ren Suit

In May, 2019, Heng Ren, an individual public shareholder of Sinovac brought claims against both Yin and Sinovac in Massachusetts Superior Court.  Heng Ren seeks damages for breach of fiduciary duty, aiding and abetting breaches of fiduciary duty and wrongful equity dilution arising out of the same PIPE transaction at issue in the case at bar.

Sinovac timely removed the case to this Court and moved to dismiss the complaint on several grounds in September, 2020. That motion was predicated, in part, on the purported failure of Heng Ren to state a claim under Antiguan law.  As a result, this Court denied the motion without prejudice and instructed Sinovac that, if it were to continue to invoke Antiguan law, it must proffer a more complete explication of the governing authority. Heng Ren Invs. LP v. Sinovac Biotech Ltd., 542 F. Supp. 3d 59, 68 (D. Mass. 2021) ("Heng Ren I").

Sinovac then filed a second motion to dismiss in July, 2021, accompanied by a declaration from an expert on Antiguan law and exhibits consisting of pertinent statutes, judicial decisions and excerpts from treatises.

In March, 2021, the second motion to dismiss was allowed, in part, and denied, in part, resulting in the reduction of Heng Ren's complaint to one count of wrongful equity dilution. Heng Ren Invs. LP v. Sinovac Biotech Ltd., 588 F. Supp. 3d 153 (D. Mass. 2022) ("Heng Ren II").  Shortly thereafter, Sinovac moved for reconsideration of the denial of its motion to dismiss as to the wrongful equity dilution claim, which this Court denied. Heng Ren Invs. LP v. Sinovac Biotech Ltd., 609 F. Supp. 3d 17 (D. Mass. 2022) ("Heng Ren III").

## II.  **Motion to Dismiss**

### A.  **Lack of Standing**

#### 1.  **Legal Standard**

A challenge to plaintiff's standing goes to this Court's subject matter jurisdiction.

To survive a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), the party invoking federal jurisdiction bears the burden of establishing that the Court has jurisdiction. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).  When evaluating such a motion, a

court must accept all well-pled factual allegations as true and draw all reasonable inferences in favor of the nonmoving party. Sanchez ex rel. D.R.-S. v. United States, 671 F.3d 86, 106-07 (1st Cir. 2012).

In its analysis, a court may consider materials outside the pleadings and engage in preliminary fact-finding to make its ultimate legal conclusion. Skwira v. United States, 344 F.3d 64, 71-2 (1st Cir. 2003). Under the First Circuit's well-pled complaint rule, a court must disregard statements that "merely offer legal conclusion[s] . . . or [t]hreadbare recitals of the elements of a cause of action." Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011). Dismissal should be allowed only if, taking all plaintiff's allegations as true, subject matter jurisdiction cannot be justified. Id.

### 2.  Application

Defendants assert that plaintiff has alleged an impermissible derivative claim because, under Section 201 of the IBCA, plaintiff is required to seek leave from the Antigua High Court before bringing a derivative action and that has not been done in the present suit. To assess whether plaintiff alleges a derivative claim, the Court will look to the claim's substance rather than its self-stylized label. Rodriguez v. Municipality of San Juan, 659 F.3d 168, 173 (1st Cir. 2011).

Plaintiff does not dispute that a derivative claim would be improper.  Rather, he retorts that this Court has already determined in Heng Ren II that a nearly identical claim "styled as a claim for wrongful equity dilution" was "cognizable as a direct claim under Section 20."  Plaintiff asserts that the substantively similar claim in the present case is a direct claim sufficient to confer standing.  Sinovac counters that this Court did not have occasion to consider whether the alleged injury in the Heng Ren litigation was direct or derivative.

Plaintiff correctly construes this Court's decision in Heng Ren II.  There, this Court determined that at the motion to dismiss stage, a claim for wrongful equity dilution is "cognizable as a direct claim under Section 204." Heng Ren II, 588 F. Supp. 3d at 159.  This Court was persuaded by the standard set forth in the Supreme Court of Canada's decision in BCE Inc. v. 1976 Debentureholders. [2008] 3 S.C.R. 560 (Can.).  The BCE Court held that in considering a claim of oppression, a court should

> look first to the principles underlying the oppression
> remedy, and in particular the concept of reasonable
> expectations.  If a breach of a reasonable expectation
> is established, [the court] must go on to consider
> whether the conduct complained of amounts to
> oppression, unfair prejudice or unfair disregard.

Heng Ren II, 588 F. Supp. 3d at 160 (quoting BCE Inc., at para. 56).

In adopting the reasoning of BCE, this Court held that allegations that the Yin Group sold Sinovac stock at artificially low prices to dilute minority shareholder voting power, if proven, would

> establish that Yin and Sinovac acted in a manner that contravened [plaintiff]'s reasonable expectations and at least unfairly disregarded the interests of the plaintiff and other minority shareholders of Sinovac.

Id. at 161.

Here, plaintiff alleges wrongful equity dilution for substantially the same reasons as the plaintiff in Heng Ren II, namely, the 2018 PIPE transaction.  This Court's conclusion in Heng Ren II that plaintiff alleged a cognizable direct claim is equally applicable here.  Accordingly, dismissal based on standing is unwarranted.

**B.   Failure to State a Claim**

**1.   Legal Standard**

To survive a motion under Fed. R. Civ. P. 12(b)(6), the subject pleading must contain sufficient factual matter to state a claim for relief that is actionable as a matter of law and "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially plausible if, after accepting as true all non-conclusory factual allegations, the court can draw the reasonable inference that the defendant is liable for the

misconduct alleged. <u>Ocasio-Hernandez</u> v. <u>Fortuno-Burset</u>, 640 F.3d 1, 12 (1st Cir. 2011).

When rendering that determination, a court may not look beyond the facts alleged in the complaint, documents incorporated by reference therein and facts susceptible to judicial notice. <u>Haley</u> v. <u>City of Boston</u>, 657 F.3d 39, 46 (1st Cir. 2011).  A court also may not disregard properly pled factual allegations even if actual proof of those facts is improbable. <u>Ocasio-Hernandez</u>, 640 F.3d at 12.  Rather, the inquiry focuses on the reasonableness of the inference of liability that the plaintiff asks the court to draw. <u>Id.</u> at 13.

### 2.   Application

Defendant asserts that the Massachusetts statute of limitations for tort actions applies to and bars the present suit.  Plaintiff responds that Antiguan law, not Massachusetts law, governs the statute of limitations.  To determine the applicable statute of limitations, this Court will apply the choice-of-law regime of Massachusetts, the forum state. <u>See</u> <u>Klaxon</u> v. <u>Stentor Elec. Mfg.</u>, 313 U.S. 487, 496 (1941).

Massachusetts courts employ the "functional approach," based on the Restatement (Second) of Conflict of Laws § 142 (1988), to determine the applicable statute of limitations.  <u>See</u> <u>Shamrock Realty Co., Inc.</u> v. <u>O'Brien</u>, 890 N.E.2d 863, 866-67 (Mass. 2008).

Plaintiff contends that in disputes concerning the internal affairs of a corporation, however, Massachusetts courts apply the law of the state of incorporation.  Plaintiff asserts that this Court should therefore automatically apply the statute of limitations of Antigua, the jurisdiction in which Sinovac is incorporated.  Plaintiff notes that this Court applied the internal affairs doctrine in Heng Ren II to a similar wrongful equity dilution claim.  Defendant counters that in Heng Ren II, this Court applied the internal affairs doctrine to the substantive underlying claim whereas here, plaintiff seeks to apply the internal affairs doctrine to a statute of limitations.

Defendant's argument is compelling.  The internal affairs doctrine occasionally displaces the functional approach because "only one State should have the authority to regulate a corporation's internal affairs." Mariasch v. Gillette Co., 521 F.3d 68, 71-72 (1st Cir. 2008).  The application of a statute of limitations has little bearing on the internal affairs of a corporation.  Thus, plaintiff's citations to Natale and Heng Ren II are inapposite.  In each case, this Court applied the internal affairs doctrine to motions to dismiss that concerned the substance of the underlying claim, not a statute of limitations bar.

While few courts have considered whether the internal affairs doctrine applies to a question of conflicting statutes

of limitations, the Third Circuit Court of Appeals declined to
rule that the internal affairs doctrine would apply, holding

> [w]e do not need to consider the full reach of the
> internal affairs doctrine to recognize that premise as
> an overreach.

Norman v. Elkin, 860 F.3d 111, 122 (3d Cir. 2017).  Thus, this
Court will apply the "functional" approach to determine the
applicable statute of limitations.

Plaintiff contends that even under the functional approach,
this Court should apply the Antiguan statute of limitations.
Plaintiff asserts that under the functional approach, this Court
must first determine which jurisdiction has the most significant
relationship to the claim.  He cites the first sentence of § 142
of the Restatement which states that whether a claim will
survive a statute of limitations defense is decided based on the
principles in § 6 of the Restatement.  Section 6(2), in turn,
lists factors intended to evaluate which forum has the most
significant relationship to the claim.

Plaintiff erroneously ignores § 142(1) of the Restatement
which provides that "[t]he forum will apply its own statute of
limitations barring the claim."  That section governs because
the forum, Massachusetts, has the shorter statute of
limitations, which bars the claim. See OneBeacon America Ins.
Co. v. Narragansett Elec. Co., 31 N.E.3d 1143, 1151 (Mass. App.

Ct. 2015); <u>see</u> <u>also</u> <u>Shamrock Realty Co.</u> v. <u>O'Brien</u> 890 N.E.3d
863, 867 (Mass. App. Ct. 2008).

Plaintiff attempts to cast § 142(1) as a general statement
of law with no application unless this Court first finds that
Massachusetts is the forum with the most significant
relationship to the matter under the § 6(2) factors.

Plaintiff's argument is unpersuasive.  While the first
sentence of § 142 references the § 6(2) factors, Massachusetts
courts have construed § 142(1) to be consistent with the outcome
suggested by the § 6(2) factors. <u>OneBeacon America Ins. Co.</u>,31
N.E.3d at 1151; <u>see</u> <u>also</u> <u>New England Tel & Tel. Co.</u> v. <u>Gourdeau</u>
<u>Constr. Co.</u>, 647 N.E.2d 42, 45 n.6 (Mass. 1995) ("The balance of
§ 142 seems to set forth the way in which the principles of § 6
will be implemented in almost all instances.").  This Court
construes that holding to mean that when the forum's own statute
of limitations would bar the claim, it will have the most
significant relationship under the § 6(2) factors.  Because the
Massachusetts statute of limitations would bar plaintiff's
claim, § 142(1) directs this Court to apply the Massachusetts
statute of limitations.

The three-year Massachusetts statute of limitations bars
plaintiff's claim.  Because the claim at issue is time-barred,
this Court declines to consider additional arguments as to the
merits.

**ORDER**

For the foregoing reasons, the motion of defendants Sinovac Biotech Ltd. and Weidong Yin to dismiss the complaint (Docket No. 20) is **ALLOWED.**

**So ordered.**


 /s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated:  September 13, 2023